IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | MDL Docket No 04-1606 VRW |
| DEEP VEIN THROMBOSIS | ORDER |
| This Document Relates To: | |
| 05-1896  VRW | |
| _____/ | |

    On May 6, 2005, Stephen J Purtill signed and filed a complaint, purportedly on behalf of Stephen and Valerie Marsh, for damages resulting from a deep vein thrombosis allegedly suffered by Mr Marsh after taking a flight operated by defendant Delta Airlines ("Delta") in May 2003. Purtill practices with the O'Reilly & Danko law firm; two other lawyers from that firm are counsel of record in this case, Michael S Danko and Kristine K Meredith. According to a letter from Mr Marsh received by the court on January 22, 2008, Mr and Mrs Marsh did not authorize the lawsuit filed on their behalf and did not become aware of the lawsuit until they received

correspondence from the O'Reilly & Danko law firm on January 19, 2008.  Doc #26 in No 05-1896.

Based on these allegations, on February 19, 2008, the court ordered Purtill, Danko and the O'Reilly & Danko law firm to show cause why sanctions should not be imposed against them for the improper signing and filing of a complaint on behalf of Mr and Mrs Marsh in violation of FRCP 11.  Doc #29.  Danko, Purtill and the O'Reilly & Danko law firm responded to the order to show cause on March 11, 2008.  Doc #35.  While the order to show cause was pending, Delta filed its own motion for sanctions against the O'Reilly & Danko law firm, seeking recovery of the legal fees incurred in defending against this litigation.  Doc #31.

For the reasons discussed below, the court declines to sanction Danko, Purtill and the O'Reilly & Danko law firm under FRCP 11.  Delta, however, is entitled to recover reasonable attorney fees incurred in defending against this litigation.  Accordingly, Delta's motion for sanctions is GRANTED.

I

A

The court turns first to the question whether Purtill, Danko and the O'Reilly & Danko law firm should be sanctioned under FRCP 11(c)(3), which allows the court to sanction attorneys on its own initiative.  By presenting to the court a complaint, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances * * * the factual contentions have evidentiary support * * *."  FRCP 11(b)(3).  Perhaps the most basic factual

2

contentions implicit in a complaint are that the plaintiff consents to the filing of suit and prays for the relief requested. Another court faced with the bizarre circumstance of an allegedly unauthorized complaint noted that "[a] complaint cannot be 'well grounded in fact' if a client does not authorize its filing." <u>Cimeo v East Whiteland-Tredyffrin Joint Transp Authority</u>, 151 FRD 55, 58 (ED Pa 1993)(quoting an earlier version of FRCP 11).

Generally, when "a complaint is the focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." <u>Holgate v Baldwin</u>, 425 F3d 671, 676 (9th Cir 2005)(internal quotations omitted). Applying the test to the facts of this case, the court must determine whether the O'Reilly & Danko attorneys had actual authority to file the complaint and whether they conducted a reasonable and competent inquiry regarding their authority before signing and filing the complaint.

**B**

It is undisputed that Mr Marsh contacted the O'Reilly & Danko law firm by email on July 16, 2003 to explore the possibility of pursuing a claim against Delta based on a pulmonary embolism he suffered after a Delta flight. Danko Decl, Doc #22, Exh A. It is also undisputed that Danko telephoned Mr Marsh in response to this email and that the two discussed DVT litigation and the possibility of O'Reilly & Danko representing Mr Marsh. Doc #22 at ¶2. According to Danko, during this conversation, Mr Marsh agreed to

3

proceed as suggested by Danko: by filing a complaint immediately before the expiration of the statute of limitations in May 2005. Doc #22 at ¶¶5-6.  A former O'Reilly & Danko paralegal who worked on the firm's DVT cases in July 2003 states that she contacted Mr Marsh in 2003 to obtain details about his alleged injury and other information and that during this communication Mr Marsh expressed his desire that his case be pursued.  Turner Decl, Doc #24 at ¶¶4-5.  Mr Marsh, on the other hand, contends that he did not agree to proceed with litigation in July 2003 – in fact, Mr Marsh has informed the court that he has always detested the tactic of filing suit just before the expiration of the statute of limitations, and that he never would have agreed to such a plan.  Doc #44.

There is a dispute between Mr Marsh and Danko whether Mr Marsh authorized the May 2005 filing of a complaint during their communications in July 2003.  But the court need not resolve that dispute because the communications from the O'Reilly & Danko firm to Mr Marsh immediately before Purtill signed and filed the complaint made clear to Mr Marsh that no lawsuit would be filed. While Danko states that Mr Marsh was sent status reports on July 21 and November 19, 2003, and February 26 and September 23, 2004, Doc #22 at ¶10, the only confirmed communications between the firm and Mr Marsh occurred in the weeks just before the filing of the complaint on May 6, 2005.  At that time Cynthia Denny, an O'Reilly & Danko paralegal, sent an email to Mr Marsh that stated in relevant part: "You contacted our law firm on July 16, 2003 regarding a possible DVT complaint.  Our staff sent a contract to you shortly after you emailed Mr Danko but we did not receive your signed agreement.  Please contact me immediately if you wish to

4

pursue your case." Doc #22, Exh B.

On May 2, 2005, Mr Marsh responded:

> Thanks for getting back with me. I'm now about two years removed from my pulmonary embolism and seem to be enjoying a fairly normal life (though not one without lots of worries about when the next one will come). Also, the flight that likely caused my embolism occurred on a domestic flight from Florida to Colorado, so I'm not sure my case has the appeal of some of the other ones you do that involve international flights.

Doc #22, Exh B.  While Mr Marsh did not state unequivocally that he did not wish to file a complaint, Denny's communication, which did not mention the approaching statute of limitations deadline or the imminent filing of a complaint, did not invite an explicit disavowal.

A statement in Denny's next email made clear that action would be required by Mr Marsh if he wished his case to proceed: "I need to get a signed contract if you would like us to represent you in this manner.  (There is no retainer required as you may already know.)  Please provide a fax number at this time due to time constraints."  Doc #22, Exh B.  Mr Marsh replied to the email with his updated mailing address on May 3 (which was not recorded by the O'Reilly & Danko law firm).  At most, Mr Marsh's reply was an indication that he wished to receive further information from the law firm.  The only reasonable conclusion to be drawn from this correspondence – which stated that receipt of a signed contract was a condition precedent to representation – is that, as of May 3, 2005, Mr Marsh did not authorize the initiation of litigation on his behalf.

Based on this record, it is clear that the O'Reilly & Danko attorneys did not conduct a reasonable and competent inquiry

5

to determine whether Mr Marsh in fact consented to the filing of a complaint in his name.  If Purtill had reviewed the emails sent to and from Mr Marsh, it should have been reasonably clear to him that consent to suit had not been given.  At that point, Purtill should have inquired further, but instead he signed and filed the complaint and never communicated with Mr Marsh again.  In addition, the O'Reilly & Danko attorneys have offered no justification for filing suit in the name of Mrs Marsh – who no one at the O'Reilly & Danko even claims to have communicated with.

Since the O'Reilly & Danko attorneys had no actual authority to file the complaint nor did they conduct a reasonable and competent inquiry before filing the complaint to determine whether they had authority, a sanction may be appropriate under the Holgate test.  Holgate, 425 F3d at 676.

C

The O'Reilly & Danko attorneys argue that to hold them responsible for filing the complaint without clear and proper authority, the court is imposing a "judicial Hobson's choice." Under this argument, had the O'Reilly & Danko not filed the suit, they would have been subject to malpractice liability and state bar disciplinary proceedings for failing to file the complaint before the statute of limitations expired.  Doc #35 at 11-12.  The court is unimpressed by this argument.  If the expiration of the statute of limitations was of such concern to the O'Reilly & Danko attorneys, they reasonably could have been expected to communicate to Mr Marsh in their emails to him that expiration of the statute of limitations was approaching.  If the O'Reilly & Danko attorneys

truly believed that it was their obligation to file suit before the running of the statute of limitations despite lack of clear consent to representation, then the reasonable course of action would have been to contact Mr Marsh immediately after filing the complaint to obtain his consent or, alternatively, an instruction to withdraw the complaint.  But neither Purtill, Danko nor anyone else at the O'Reilly & Danko law firm actually communicated with Mr Marsh – despite the fact that it is undisputed that Mr Marsh was easily reachable via email – until January 2008.

The lack of a reasonable level of communication with Mr and Mrs Marsh is also reflected in the quality of the complaint that was filed by Purtill on May 6, 2006.  The complaint alleged that Mr Marsh began to experience leg pain shortly after his Delta flight and that hospital tests revealed a clot in his leg.  Doc #1 at ¶13.  According to Mr Marsh, he was never diagnosed with a clot in the leg; his clot presented in the lungs.  Doc #44.  The O'Reilly & Danko attorneys dismiss this as a "distinction without a difference."  Doc #39 at 10 n4.  Leaving aside the question whether an airline defendant arguing causation would agree with this proposition, it is unlikely that the O'Reilly & Danko attorneys likely would have gotten such a basic detail of Mr Marsh's injury wrong had they made a reasonable investigation before filing the complaint.  In addition, even though the travel relevant to Mr Marsh's injury was solely domestic, the complaint filed on May 6, 2005 stated a claim under the Warsaw Convention.  Doc #1 at ¶16.  These circumstances further evince lack of a reasonable inquiry.

The cumulative effect of such errors gives the court concern that rather than treating Mr and Mrs Marsh's case as an

**7**

individual matter deserving individual attention, Purtill, Danko and the O'Reilly & Danko firm treated the case as simply a number, with filing a complaint before the expiration of the statute of limitations the first - and effectively only - priority. It was due to this concern that the court cited Cal Bus & Prof Code §6147(a)'s requirement that a contingent fee contract be in writing in its order to show cause. Doc #29. The court was not implying that violation of the written fee agreement provision was itself a ground for sanctions, but rather that the failure of the O'Reilly & Danko firm to secure Marsh's signature on such an important document at any time before or after the filing of the complaint suggests that little individual attention was ever paid to the Marsh matter.

D

The O'Reilly & Danko attorneys argue that because FRCP 11 has been raised sua sponte by the court, sanctions are not appropriate because their misconduct does not rise to the level of contempt of court. The O'Reilly & Danko attorneys rely on <u>United Nat Ins Co v R&D Latex Corp</u>, 242 F3d 1102 (9th Cir 2001), which states: "In light of this important distinction, sua sponte sanctions will 'ordinarily be imposed only in situations that are akin to a contempt of court.'" <u>United</u>, 242 F3d at 1116 (quoting <u>Barber v Miller</u>, 146 F3d 707, 711 (9th Cir 1998)(quoting FRCP 11 adv cmte notes, 1993 am). The distinction referred to is that, in sua sponte sanctions proceedings, unlike with sanctions on a party's motion, there is no safe harbor allowing lawyers to withdraw or correct their filings. <u>United</u>, 242 F3d at 1115-16. To

8

avoid chilling zealous advocacy, courts typically refrain from imposing sanctions on their own initiative unless the attorney's behavior is akin to contempt of court.

It is somewhat disingenuous for the O'Reilly & Danko attorneys to draw this distinction here. The court did not truly raise FRCP 11 of its own accord, but rather in response to a letter from Mr Marsh, who, because he is not an opposing party but rather O'Reilly & Danko's purported client, could not move for sanctions himself. This is clearly not the ordinary sua sponte situation. No chilling effect is implicated here; a lawyer without authority to file suit for his client need not be encouraged to advocate zealously for such client. In addition, Delta, the opposing party, could not have moved for FRCP 11 sanctions on this ground when the complaint was filed because it had no way of knowing that the O'Reilly & Danko attorneys lacked authority; no one had any way of knowing this until O'Reilly & Danko finally informed Mr Marsh about the lawsuit in January 2008. The reasoning of <u>United</u> does not apply to this case, and the court need not make a finding that the O'Reilly & Danko attorneys' behavior was akin to contempt of court to support an award of sanctions.

E

Although the court has the authority to sanction Purtill, Danko and the O'Reilly & Danko law firm under FRCP 11(b)(3), it nonetheless declines to do so.

The court is aware that the unauthorized filing of the complaint has resulted in considerable inconvenience to Mr and Mrs Marsh, who are attorneys themselves and now bear the unenviable

**9**

burden of explaining to conflict-checking employers and clients why they are named plaintiffs in litigation against a large corporation.  The unauthorized filing has also resulted in considerable expense to the court.  But the unauthorized filing of the complaint in this case without a reasonable inquiry was due to the carelessness and poor office management of the O'Reilly & Danko attorneys.  There appears to have been no bad faith on the part of the attorneys.  Although, as discussed above, a finding of bad faith is not required to support FRCP 11 sanctions, under these circumstances, the court finds that FRCP 11 sanctions are inappropriate.  The O'Reilly & Danko attorneys contend that the costs incurred in litigating this matter and the embarrassment caused by these proceedings constitute de facto sanctions.  More importantly, as discussed below, they will be required to compensate Delta for the unnecessary expense of litigating this case.  These sanctions are sufficient.

II

The unauthorized prosecution of this lawsuit also caused significant expense for Delta.  But for the filing of the complaint, Delta would not have incurred legal expenses defending this lawsuit.  To recover those expenses, Delta moved for sanctions against O'Reilly & Danko under 28 USC § 1927, the inherent power of the court and Civ Local Rule 1-4.  Doc #31.

Under 28 USC § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

10

conduct." 28 USC § 1927. Section 1927 does not apply to an initial pleading. Moore v Keegan Mgmt Co, 78 F3d 1118, 1134 (9th Cir 1996). Therefore, Delta argues that it is entitled to sanctions under 28 USC § 1927 for O'Reilly & Danko's continued prosecution of this litigation after the filing of the initial complaint.

Although O'Reilly & Danko attempts to persuade the court that a finding of bad faith is a prerequisite to the imposition of sanctions under § 1927, Doc #39 at 4, the law in this circuit is clear: "recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power." Fink v Gomez, 239 F3d 989, 993 (9th Cir 2001). The court agrees with Delta that the O'Reilly & Danko were reckless in continuing the litigation after the filing of the first complaint.

Even accepting O'Reilly & Danko's contention, discussed above, that the filing of the first complaint on May 6, 2005 was driven by concern about the statute of limitations, given that it was at least unclear whether Mr and Mrs had consented to the filing of the complaint, it was reckless to continue litigating the suit without securing their consent. On May 24, 2005, Delta attorney Richard Grotch advised Purtill, Danko and Kristine K Meredith, another O'Reilly & Danko attorney, that the complaint made reference only to domestic air travel, but prayed for relief under the Warsaw convention, and that the if the convention was not applicable, then the case should be dismissed in accordance with a prior order of the court. Grotch Decl, Doc #33 at ¶2. Upon receiving this notice that the hastily filed complaint was deficient, rather than contacting Mr and Mrs Marsh to review the

11

case, the O'Reilly & Danko attorneys simply filed an amended complaint on May 31, 2005.  Doc #5.

O'Reilly & Danko incredibly asserts that due to the periods of dormancy in this case, the firm "had no need to periodically review the file or even to speak with the Marshes." Doc #39 at 12.  O'Reilly & Danko prosecuted this case through a number of milestones in this court (including the August 26, 2005 dismissal, Doc #14), the United States Bankruptcy Court for the Southern District of New York and the Ninth Circuit.  Failing to contact Mr and Mrs Marsh regarding any of these developments between the filing of the complaint in May 2005 and January 2008 was a clear violation of Cal Prof Conduct Rule 3-500, which requires that an attorney keep a client reasonably informed about significant developments relating to the representation.  Rather than following ethical obligations, O'Reilly & Danko compounded the problem that began when they unreasonably filed a lawsuit without proper authority.

The court finds that the post-filing prosecution of this case by O'Reilly & Danko without ever informing Mr and Mrs Marsh of the existence of the lawsuit rises to the level of recklessness. Because the court finds sanctions under 28 USC § 1927 to be an appropriate basis for granting Delta's motion, it need not reach Delta's arguments regarding the court's inherent powers or Civ Local Rule 1-4.

Delta is entitled to the costs, expenses, and attorney fees reasonably incurred because of such conduct.  The court notes, however, that Delta should recover only fees and costs it would not have incurred but for the continued prosecution of this lawsuit

**12**

after the May 6, 2005 filing of the first complaint.  Thus, while Delta may recover the costs of litigating this motion, Delta may not recover a pro-rated portion of the fees for work product that was used on other DVT cases.  In addition, Delta must provide substantiation that would permit the court to perform a lodestar cross-check of the claimed attorney fees.  See <u>In Re HPL Technologies, Inc, Securities Litigation</u>, 366 F Supp 2d 912 (ND Cal 2005)(Walker, J).

III

For the reasons discussed above, the court declines to impose FRCP 11 sanctions on Purtill, Danko and the O'Reilly & Danko law firm.  Delta's motion for sanctions under 28 USC § 1927 is GRANTED.  Delta is DIRECTED to file and serve substantiation of its requested fees and costs on or before July 8, 2008.  O'Reilly & Danko may file and serve any objections to Delta's fee request on or before July 15, 2008.  The matter will then be deemed submitted.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge